ORIGINAL

FILED

# In the United States Court of Federal Claims

MAR 19 2015

U.S. COURT OF
FEDERAL CLAIMS

CHARLES F. DAY & ASSOCIATES,
LLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 15 - 289 C

Judge _____

ORIGINAL

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Charles F. Day & Associates, LLC ("CFDay"), as and for its Verified

Complaint against the Defendant, the United States of America, acting by and through the United

States Army ("Army"), alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff seeks immediate declaratory relief against the Defendant, in an order

declaring that the Army's override of the automatic stay of contract performance issued in the

Government Accountability Office ("GAO") Protest file number B-411164.1 is arbitrary,

capricious, an abuse of discretion, and otherwise not in accordance with law, and therefore is

invalid and a declaration that Army's position in deciding to override the stay is not substantially

justified under applicable law, specifically 31 U.S.C. § 3553(d)(3) of the Competition in

Contracting Act ("CICA").  Plaintiff also seeks a temporary restraining order and preliminary

injunctive relief against the United States acting by and through the Army, in an order enjoining

the Army from continuing performance of Contract No. W15QKN-14-R-0137 (the "Contract")

1

for Artillery Training and Field Support until the GAO fully reviews CFDay's protest of the contract award.

2.      CFDay is not requesting a determination regarding the underlying merits of its GAO bid protest by this Court, and continues to pursue its challenges to the contract award before the GAO.

## PARTIES

3.      Plaintiff, CFDay, is a limited liability company organized pursuant to the laws of Nevada with its principal place of business in Stafford, Virginia.  It is a Service-Disabled Veteran-Owned Small Business (SDVOSB) with expertise in the areas of artillery training and maintenance, program management, and other areas, while serving as the incumbent with respect to the contract preceding the Contract (the "predecessor contract").  CFDay has successfully performed all work under the predecessor contract and received Outstanding feedback on its past performance with no terminations for default.

4.      Defendant is the United States, under the United States Army Material Command and the Army Contracting Command (hereinafter "Army").

## JURISDICTION

5.      This court has jurisdiction over this action—including the authority to grant declaratory or injunctive relief—under the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874 (1996). 28 U.S.C. § 1491(b) (granting the Court of Federal Claims jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award . . . or any alleged violation of a statute or regulation in connection with a procurement or a proposed procurement"); see also *RAMCOR*

**The Award and Protest**

13.    Army gave notice to CFDay of their unsuccessful offer on February 5, 2015 via an email from Rachael Houle, Contracting Officer for Army – Picatinny Arsenal.  This same notice contained the awardee, LSGS, and their evaluated ratings and price.

14.    Army failed to give CFDay pre-award notice as required under FAR 15.503(a)(2)(i)(A), which caused CFDay to be behind the curve on its protest issues and caused the contract award to occur before CFDay could protest issues, pre-award.

15.    CFDay immediately asked for a required debriefing in accordance with 48 C.F.R 15.506, and the debriefing was completed on February 18, 2015.

16.    CFDay obtained evidence from the System for Award Management (SAM) and from the Small Business Administration (SBA) that indicated that the contract awardee, LSGS, was potentially not a small business as was required by this SDVOSB set-aside contract.  CFDay wrote a size protest to the Contracting Officer, Ms. Houle, which was to be forwarded to the SBA, per federal regulation, on February 10, 2015, that protested the award to LSGS on the basis that LSGS was ineligible to receive the award due to its size status on this procurement.

17.    After the required debriefing, CFDay submitted a formal protest to the GAO on February 23, 2015, protesting the evaluation criteria, evaluation methods, scores, and other issues.  CFDay provided a copy of its protest to Army contracting officer, Rachael Houle. Pursuant to 31 U.S.C. § 3553 and 48 C.F.R. 33.103(c)(1), Army was required to suspend performance of the Contract pending disposition of the GAO protest.

18.    GAO is required by 31 U.S.C. § 3553(a)(1) and 48 C.F.R. 21.9(a) to resolve the protest within one hundred days from the date a protest is filed, in this case on or before June 3, 2015.

5

9.      Army first issued an RFP under solicitation number W15QKN-14-R-0137 for New Equipment Training, Delta New Equipment Training and/or providing Field Service Representatives (FSR) support for the M777A2 Howitzer, M119A3 Howitzer and the M111A1 Improved Position Azimuth Determining System (IPADS) issued by the Army Contracting Command, Picatinny Arsenal, New Jersey October 8, 2014.  The Solicitation limited the competition to offerors that met the criteria of a particular North American Industry Classification System ("NAICS") code 541330 and stated that the contract would be awarded to the offeror whose proposal represented the best value to the Government, taking technical/management plan, past-performance, and price factors into consideration.  Under the Solicitation's stated evaluation criteria, the Management/Technical Factor is more important than the Past Performance Factor and the Past Performance Factor is more important than the Price Factor.  All evaluation factors other than price, when combined, are significantly more important than price.

10.     Army issued several amendments to the RFP, with final proposals due on or around November 25, 2014.  The Solicitation also limited competition to Service-Disabled Veteran-Owned Small Businesses ("SDVOSB").

11.     Army issued the Solicitation to procure services that CFDay was already performing as the incumbent contractor on the predecessor contract.  This was the re-compete for those services for PM-Towed Artillery Systems.

12.     The RFP limited offerors to a certain NAICS code size standard, in this case $35.5 million in average annual receipts.  The RFP was incorrect in that the applicable size standard was actually $38.5 million.  The awardee, Loyal Source Government Services, LLC ("LSGS"), has subsequently been determined to be other than small under this size standard.

4

*Servs. Group, Inc. v. United States*, 185 F.3d 1286, 1291 (Fed. Cir. 1999) (determining that the Court of Federal Claims may review the merits of an override independent of any consideration of the merits of the underlying contract award). This aspect is critical as the merits of the underlying contract award are still under review of the GAO, who has valid jurisdiction.

## FACTUAL ALLEGATIONS

**The Predecessor Contract**

6.      CFDay had performed on the predecessor contract as the incumbent contractor, some of which included work overseas in Afghanistan and Iraq. CFDay successfully performed all work under the predecessor contract.

7.      During performance as incumbent contractor, CFDay believes it was asked to perform out of scope work, and communicated that fact to the Army. CFDay submitted a claim for an equitable adjustment to the Army prior to the Contract award so as to avoid any appearance of impropriety. CFDay made a good faith effort to resolve the out-of-scope issue and uphold the integrity of the procurement system by not waiting until after the Contract award to make the out-of-scope work claim for equitable adjustment.

8.      Army has not issued a response to the claim for equitable adjustment. Army is in a deemed denial stage as more than 60 days have passed since CFDay submitted its claim for equitable adjustment. CFDay has, as of March 16, 2015, reached out to Army to determine the current status of the claim. CFDay fears that its claim for equitable adjustment on out-of-scope work irritated the Army's contracting office and served as the basis for potentially retaliatory actions on part of the Army.

**The Solicitation**

3

19.     At the time of these protests being submitted, CFDay was still performing the predecessor contract.  LSGS was not to begin Contract performance until CFDay's contract was completed on or about March 5, 2015.  CFDay was at all times willing, ready, and able to continue performance of the contract work until all issues surrounding the procurement were settled, which would have resulted in no interruption of work and no jeopardy of Army mission success.

**The Stay Override**

20.     On March 11, 2015, CFDay received notice that the Army had written a determination and finding ("D&F") to the GAO that it was in the "best interest of the United States" to override the CICA automatic stay of contract performance.  As a result of this D&F, LSGS was allowed to move forward as Contract awardee.

21.     Under 31 U.S.C. § 3553(d), a federal agency may not authorize performance of a contract to begin while a protest is pending if the agency received notice of the protest within ten days following the date of award, or within five days of a required debriefing.  If authorization for contract performance to proceed was not withheld before receipt of notice that a protest is pending, the contracting officer must direct the contractor to cease performance.

22.     Under 31 U.S.C. § 3553(d)(3)(C), the head of a procuring activity responsible for the award of a contract may authorize performance *if* the agency issues a written finding that either performance of the contract is in the best interest of the United States or urgent and compelling circumstances that significantly affect interests of the U.S. will not permit waiting for the decision of the Comptroller General concerning the protest and the Comptroller General is notified of this finding.

23.    While CFDay does not have access at this time to the written finding, D&F, CFDay asserts that there is no reasonable basis within the bounds of law that could permit an override that's in the best interest of the United States.

24.    CFDay maintained many of its critical employees for this mission, in that the Program Manager, Mr. Dale Winkler, along with other personnel stayed with the company and/or were not offered jobs as part of the transition to LSGS.

25.    Most of the CFDay employees who were employed under the contract had no choice but to transition to LSGS and provide the knowledgeable workforce that they would have otherwise lacked.

26.    The sole individual with any knowledge of the program that LSGS employed was a Mr. Dave Nixon, who was a CFDay employee up until the contract was awarded to LSGS.  At that time, he resigned immediately from CFDay and took over as Program Manager for LSGS.

27.    CFDay's predecessor contract specifically allowed for extended performance.  In fact, extensions for performance had been completed previously with great success.  Thus, the possibility of a similar contract modification or issuance of a bridge contract would have been feasible and CFDay was more than willing to continue performance to maintain the status quo while the issues were resolved and/or a manageable transition plan was instituted.

28.    CFDay has the resources, knowledge, Human Resources prowess, on-site personell, and willingness to transition employees (most of whom are ours) back to CFDay should the Army choose to or be required to keep the status quo.

29.    Army's stated rationale for refusing to obey the CICA stay is insufficient, as a matter of law, to establish that authorizing contract performance is in the best interests of the United States.  LSGS has never performed in the NAICS code in question.  LSGS has never

worked with the M777 weapon systems or any of the weapon systems that are at the core of this mission. So, there is no proper rationale to support the stay override.

30.     Army's override of the stay was not because of the best interests of the United States, but it was instead because of a retaliatory grudge that the Army contracting office held against CFDay for our submission of a claim for equitable adjustment on what we believed was out-of-scope work. This grudge is the only feasible reason that the Army had to override the stay, because otherwise, all regulations, facts, policies, efficiencies, and common sense indications point to simply retaining the status quo and have a proven performer who is willing and able to continue performance, uninterrupted while genuine issues that were made known to the Army are settled. Since CFDay's submission of its claim for equitable adjustment, the Army has, at every turn, made efforts to not award this contract to CFDay.

31.     LSGS started work again on the Contract on or about Thursday March 12, 2015.

**The SBA Determination**

32.     The SBA made its determination on CFDay's protest of LSGS's size on Thursday March 12, 2015 under Size Determination Memorandum File Number 3-2015-046 and Size Determination Decision Letter. The SBA found that LSGS was not a small business for this procurement.

33.     Furthermore, the SBA stated that "LSGS does not have the technical expertise to perform the program management functions of the contract and has no experience specific to the howitzer equipment training (primary and vital requirements of the contract)." LSGS was found to be unusually reliant upon their subcontract, Tec-Master Inc. and thus not small for this procurement, which means they are ineligible for the contract award.

34.    Had the Army issued a pre-award notice to CFDay, CFDay could have protested the size of LSGS *before* the award had ever been issued to them.  Yet, the Army pressed onward anyway, even in the face of a genuine issue relating to LSGS's size.

35.    Now that the Army has been issued the SBA's determination, the Army should be making arrangement to terminate the contract with LSGS.  Army has not indicated that they are doing that.

36.    CFDay has reached out to Mr. Wade Brown, Army attorney, to try to get guidance on the way forward and avoid the very actions before this Court.  CFDay supports the Army mission and has a great deal invested in supporting the Army.  However, CFDay was not given a response to multiple requests for a conversation this week of March 16th, and thus had no choice but to assert its rights before they were further damaged.

## COUNT I: DECLARATORY JUDGMENT

37.    Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq.*, and RCFC 57, this Court is empowered to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

38.    CFDay is entitled to declaratory judgment that Army's decision to override the automatic CICA stay is invalid under the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) because it was arbitrary and capricious, and abuse of discretion, and otherwise not in accordance with law.

39.    Army's decision was arbitrary and capricious, and abuse of discretion, and otherwise not in accordance with law because the factual premises for the D&F for the override could not possibly have been proper given the totality of the circumstances and what must be in place for an override to occur.

## COUNT II: TEMPORARY RESTRAINING ORDER

40.     Pursuant to RCFC 65(b), the Court may issue a temporary restraining order when it appears from specific facts shown by verified complain that immediate or irreparable injury, loss, or damage will result to the applicant before the adverse party can be heard in opposition.

41.     In the present case, counsel for CFDay notified Army through its counsel, Mr. Wade Brown, that CFDay would pursue this case to the Court of Federal Claims if the United States did not provide guidance on their backing down from the CICA stay override and/or their plans to terminate the Contract with LSGS.

42.     CFDay requests a temporary restraining order to enjoin Army from continuing to authorize or direct performance of the Contract until the completion of the protest before pending before the GAO.  CFDay will suffer irreparable injury as a result of Army's continued override of the CICA stay because it will be deprived of a meaningful chance at performing the Contract under protest.  In addition, so long as Army continues to override the automatic CICA stay, this important statutory mechanism for upholding government procurement integrity will be violated. This is especially true in the face of an apparent grudge against CFDay, because all the indications that pointed to continuing performance by the incumbent during the protest period, during the SBA's determination, all of which should have been allowed to occur pre-award, but for the improper lack of notification to CFDay as a SDVOSB was not possible.  Finally, by allowing a business that was determined to be not small for this procurement to continue performance, there is very real damage being done to the integrity of the procurement process, to the goals of the Small Business Administration, and to CFDay in our not being able to perform as should have been required.

## COUNT III: PRELIMINARY INJUNCTION

10

43.     In order to establish entitlement to a preliminary injunction pursuant to a RCFC 65(a), a plaintiff must demonstrate: (i) a likelihood of success on the merits; (ii) the harm to plaintiff outweighs the harm to defendant; (iii) the public interest is served by enjoining defendant; and (iv) irreparable injury to plaintiff if defendant is not enjoined, including, but not limited to, the absence of an adequate remedy at law.

44.     In the present case, (i) CFDay's lost opportunity to compete may constitute irreparable harm; (ii) Army will not be harmed by complying with the CICA stay because there are several alternatives by which it can obtain the services that are critical to the mission while the GAO protest remains pending.  Army mission can continue without trouble because CFDay is ready and willing to take our employees back and continue performance on a mission that we have received Outstanding feedback on over the course of our performance; (iii) the public interest in open, honest, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid.  The public interest is compromised when the mission and goals of the SBA are jeopardized when an entity that is determined to be other than small continues performance on a small set-aside contract.  The public interest in fair, honest, and open competition is compromised when the Army improperly overrides a statutory CICA stay; and (iv) the balance of the equities and hardships weighs in CFDay's favor as Army has options to obtain the mission services and LSGS is not entitled to performance – if at all – until the GAO protest is resolved.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff CFDay respectfully requests that this Court grant judgment in its favor, and grant the following relief:

(1)     A declaration that Army's decision to override and lift the automatic stay of performance was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and therefore is invalid and a declaration that Army's position in deciding to override the stay is not substantially justified under applicable law and circumstances.  If the Court declares the override was improper, then an automatic re-emergence of the statutory CICA stay would go back into effect.

(2)     Alternatively, an injunction prohibiting continued performance by LSGS, a company that has been deemed to be other than small, until the GAO issues its decision on CFDay's protest. This is so the Army is not allowed to reach a point at which continued performance persists for a lengthy period of time.  By allowing performance by LSGS to continue, the Army may be trying to maneuver to a position where continued performance is considered to be in the best interest of the Army due to the length of time that has passed.

(3)     A Temporary Restraining Order maintaining the status quo of a stay of performance under the Contract and precluding Army from allowing any work to be performed by LSGS under the Contract until such time as the Court has the opportunity to hear arguments and decide the motion for a preliminary injunction.

(4)     An award to Plaintiff for the reasonable costs of missing out on continued performance of the contract, for having to prepare multiple suits and claims to overcome mistakes by Army, costs that include fees, costs, interest, and expenses incurred in prosecuting this Complaint.

(5)     CFDay would like the Army to remove any negative denotations in our performance record or on our profile with the Army as a result of these issues.

(6)     Any other relief the Court deems just and proper.

Dated _March 18, 2015_

Respectfully submitted,

**John A. Tacker, Attorney of Record - Plaintiff**
**702 N. Perry Street, Davenport, IA 52803**
**(563) 324 – 1670**
**legal@cfday.net**

# In the United States Court of Federal Claims

| | |
|---|---|
| CHARLES F. DAY & ASSOCIATES, LLC, | ) <br> ) <br> ) <br> ) |
|         Plaintiff, | )    Case No. _____ <br> ) |
|     v. | )    Judge _____ <br> ) |
| THE UNITED STATES, | ) <br> ) |
|         Defendant. | ) <br> ) <br> ) |

## DECLARATIONS OF CHARLES F. DAY AND THERESA DAY

We, Charles F. Day and Theresa Day, CEO/owner and co-owner respectively of Charles F. Day & Associates, LLC, verify under penalty of perjury of the laws of the United States of America that the facts contained in the foregoing Verified Complain are accurate to the best of our knowledge, information, and belief.

Date _March 18, 2015_

_Charles F. Day_ (signature)

Charles F. Day, President and CEO/Owner
Charles F. Day & Associates, LLC

14

# In the United States Court of Federal Claims

CHARLES F. DAY & ASSOCIATES,
LLC,

                Plaintiff,

        v.

THE UNITED STATES,

                Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

Judge _____

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be delivered, by hand, facsimile, or electronic means, on this 18th day of March, 2015, copies of the foregoing (1) Plaintiff's Complaint for Injunctive and Declaratory Relief  and (2) Declarations of Charles F. Day and Theresa Day on the following counsel:

A. For the United States, the Dept. of Justice Commercial Litigation Branch;

B. For the contracting agency, Army, Mr. Wade Brown;

C. For the awardee, Mr. Patrick Rothwell.

Dated _March 18, 2015_

Respectfully submitted,

**John A. Tacker, Attorney of Record - Plaintiff**
**702 N. Perry Street, Davenport, IA 52803**
**(563) 324 – 1670**
**legal@cfday.net**

15